Matter of Gomez v Martinez (2020 NY Slip Op 06261)





Matter of Gomez v Martinez


2020 NY Slip Op 06261


Decided on November 4, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 4, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
SHERI S. ROMAN
SYLVIA O. HINDS-RADIX
COLLEEN D. DUFFY, JJ.


2019-03805
2019-03806
 (Docket Nos. V-933-08, V-24766-07)

[*1]In the Matter of Michael Gomez, petitioner- respondent, 
v
Ilea Martinez, respondent-appellant; Jaymian G. (Anonymous), nonparty-appellant.


Lewis S. Calderon, Jamaica, NY, attorney for the child, the nonparty-appellant.
Jeffrey C. Bluth, New York, NY, for respondent-appellant.
Jennifer Arditi, Maspeth, NY, for petitioner-respondent.



DECISION & ORDER
In related proceedings pursuant to Family Court Act article 6, (1) the subject child appeals from a decision of the Family Court, Queens County (Craig Ramseur, Ct. Atty. Ref.), dated March 7, 2019, and (2) the mother and the subject child separately appeal from an order of the same court dated March 8, 2019. The order dated March 8, 2019, insofar as appealed from, dismissed the mother's petition to relocate to New Jersey with the subject child. The mother's notice of appeal from the decision dated March 7, 2019, is deemed to be a notice of appeal from the order dated March 8, 2019 (see CPLR 5512[a]).
ORDERED that the subject child's appeal from the decision is dismissed, without costs or disbursements, as no appeal lies from a decision (see Schicchi v J.A. Green Constr. Corp., 100 AD2d 509); and it is further,
ORDERED that the order dated March 8, 2019, is reversed insofar appealed from, on the facts and in the exercise of discretion, without costs or disbursements, and the matter is remitted to the Family Court, Queens County, for an in camera interview with the subject child, preparation of an updated forensic report, a further hearing, and a new determination of the mother's petition to relocate to New Jersey with the subject child.
The parties, who were never married to each other, are the parents of the subject child, born in 2007. On June 26, 2014, upon the parties' consent, the Family Court awarded sole custody of the subject child to the mother, and awarded the father parental access, inter alia, on alternate weekends. In September 2015, the mother, the subject child, and the mother's younger child from another relationship moved from her apartment, which had been flooded, to the home of her mother and stepfather in Queens. Since her parents' house was crowded and under renovation, at the mother's request, in January 2016, the subject child moved in with the father to live on a regular basis. The mother saw the subject child on alternate weekends and twice per week.
In August 2016, the mother relocated to Eatontown, New Jersey, with a position as [*2]a supervisor for a company called "Better Qualified," where she was able to work flexible hours. Meanwhile, the subject child remained in Queens, during the entire 2016-2017 school year.
On or about August 31, 2017, the father sought and was awarded temporary legal custody of the subject child. By petition dated September 14, 2017, the father sought permanent legal custody on the grounds, inter alia, that the mother was living at an undisclosed location with a convicted felon and she heavily smoked marihuana. The mother thereafter moved for permission to relocate to New Jersey with the subject child.
At a hearing on the petitions, a forensic evaluator testified that custody should be with the mother, noting that the subject child said that he would prefer to live with the mother, and living with the mother would permit the subject child to live in a more relaxed environment where he could express his feelings. The forensic evaluator noted that the father asked the subject child if the mother was still seeing her new boyfriend, a convicted felon, and when the subject child said no, the father called him a liar, which upset the subject child. The forensic evaluator noted in his report that the boyfriend did not live with the mother and that the mother and her boyfriend decided to keep their visits to a minimum, because the boyfriend was on parole and could not leave New York State without permission.
The father testified that he had concerns about the mother's boyfriend and her "weed smoking." The father noted that for the last two years, he has worked weekends, sometimes 12 to 15 hours a day, driving a truck for film shoots. Therefore, if he were awarded parental access on weekends, the subject child would have to stay either with his mother or the maternal grandmother.
The mother testified that she worked flexible hours, and is permitted to work from home after school hours, so she can care for her younger child who is diabetic. She had worked as a realtor in New York, and when her employer in New York offered her this new position in New Jersey, and paid her security deposit for an apartment, she accepted the position and rented an apartment close to her new office. She claimed that her new location was 90 minutes by train and 45 minutes by car from New York.
The mother noted that during the summer of 2017, she arranged for the subject child's transfer to a school in New Jersey, but after the father commenced a proceeding for custody at the end of August 2017, communication with the father stopped. Once the father was awarded temporary custody, she saw the subject child every other weekend. She stated that if the subject child resided with her, the father would have parental access every other weekend and most holidays, and they would share school breaks.
The Family Court determined that both parties failed to meet their respective burdens of proof and dismissed both petitions. In so doing, the court spent one-half of the decision criticizing the opinion of the forensic evaluator, which the court discounted in its entirety. The dismissal of the mother's petition was with prejudice. The mother and the child separately appeal. The father's brief asserts that "the terms of the order of sole legal custody to the mother cannot be legally effectuated as long as the mother continues to reside in New Jersey . . . . To that end, the father has had and continues to have de facto custody."
"A request to relocate a child constitutes a change in circumstances, requiring the parent seeking to move to demonstrate [by a preponderance of the evidence] that relocating the child is in the child's best interests" (Matter of Kates v Simpson, 180 AD3d 1043, 1044; see Matter of Follini v Currie, 176 AD3d 1203, 1204-1205). In considering the issue of relocation, "the courts should be free to consider and give appropriate weight to all of the factors that may be relevant to the determination. These factors include, but are certainly not limited to each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation [*3]arrangements" (Matter of Tropea v Tropea, 87 NY2d 727, 740-741; see Matter of Follini v Currie, 176 AD3d at 1205). However, "the impact of the move on the relationship between the child and the noncustodial parent will remain a central concern" (Matter of Tropea v Tropea, 87 NY2d at 739; see Matter of Follini v Currie, 176 AD3d at 1205). "The weighing of these various factors requires an evaluation of the testimony, character, and sincerity of all the parties involved," and "deference is accorded to the Family Court's findings in this regard," although this Court's authority in relocation determinations is as broad as that of the hearing court (Matter of Masiello v Milano, 180 AD3d 683, 685 [internal quotation marks omitted]; see Matter of Follini v Currie, 176 AD3d at 1205).
Here, the mother sought permission to relocate to New Jersey based upon an offer from her employer of a new position, and a less precarious living situation which allowed her to accommodate the subject child and his younger half-brother. Both the forensic evaluator and the attorney for the subject child noted that the subject child asserts that he wishes to live with the mother in New Jersey, which is a factor to consider (see Matter of Chery v Richardson, 88 AD3d 788, 789). However, the Family Court discounted the opinion of the forensic evaluator in its entirety. A significant gap in the forensic evaluator's analysis was that he did not interview the mother's boyfriend or determine his impact on the subject child. Further, since there was no in camera interview, the views of the subject child were not elicited, and an in camera interview should be conducted.
In effect, the Family Court found that, in the absence of any reliable information from the forensic evaluator, there was no information. In fairness to the subject child, there should be an updated forensic evaluation to provide sufficient information for a new determination on the merits as to his best interests (cf. Pandis v Lapas, 176 AD3d 837).
Accordingly, we reverse the order insofar appealed from, and remit the matter to the Family Court, Queens County, for an in camera interview with the subject child, preparation of an updated forensic report, a further hearing, and a new determination of the mother's relocation petition.
CHAMBERS, J.P., ROMAN, HINDS-RADIX and DUFFY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court